JOHN HENDRIX v. UNITED STATES.

No. 845. Ind. T.   Opinion Filed April 10, 1909.

(101 Pac. 125.)

1.   **APPEAL—Review—Discretion of Lower Court—New Trial.** This court will not grant a new trial for insufficiency of the evidence, or where the evidence is conflicting. These questions being within the discretion of the trial court, its decisions will not be disturbed unless it appears from the record that the trial court abused its discretion in overruling the motion for a new trial.

2.   **PUNISHMENT—Cruel and Unusual.** When a statute prescribes a punishment of from one to five years' imprisonment in the penitentiary at hard labor for stealing cattle, it is not cruel and unusual punishment, upon conviction of such crime, to sentence the accused to imprisonment in the penitentiary at hard labor for a period of two years.

3.   **LARCENY—Instructions.** Section 965, Ind. T. Ann. St. 1899, defines "larceny" as follows: "Larceny is the felonious stealing, taking and carrying, riding or driving away the personal property of another." It was not error for the trial court to give the jury the following definition of "larceny," to-wit: "Larceny is the felonious stealing, taking, carrying, riding or driving away the property of another. It is felonious taking; that is, a wrongful and corrupt taking"—said definition not being prejudicial to the rights of the accused.

4.   INSTRUCTIONS—Circumstantial Evidence. In a case where the prosecution does not rely .upon circumstantial evidence alone for a conviction, the accused is not, as a matter of right, entitled to have the jury instructed fully upon the law of circumstantial evidence.

5.   APPEAL—Review—Harmless Error. The statutes of this state provide that, on an appeal in a criminal case, the appellate court must give judgment without regard to technical errors or defects, or exceptions which do not affect the substantial rights of the accused. In the opinion of this court, to reverse this case upon the technical errors and defects contained in the record would be a violation of both the letter and the spirit of the statute.

(Syllabus by the Court.)

*Error from the United States Court for the Central District of the Indian Territory; Thomas C. Humphrey, Judge.*

John Hendrix was convicted of larceny and brought error to the United States Court of Appeals, whence the cause was transferred to the Supreme Court of the State of Oklahoma and by that court to the Criminal Court of Appeals. Affirmed.

John Hendrix, who will hereafter be referred to as the accused, was indicted in the United States Court for the Central District of Indian Territory, sitting at Atoka, on the 3d day of October, 1906, charged with having on the 19th day of August, 1906, committed the crime of larceny, by stealing one head of cattle, of the value of $10, from D. N. Robb. On the 21st day of January, 1907, the accused was tried before a jury, which trial resulted in a verdict of guilty being returned. On February 1, 1907, being the same term of said court in which the verdict was rendered, the accused filed his motion for a new trial, which was, by the court on said date, overruled, to which the accused excepted. Whereupon he was sentenced to imprisonment for a period of two years. From said sentence and judgment he prosecuted error to the United States Court of Appeals, in which court this case was pending at the time of the creation of the state of Oklahoma, when the same was transferred to the Supreme Court of this state, and by the

2 Cr.—16

Supreme Court, upon the creation of this court, duly transferred to this court.

*Ralls Bros.* and *J. M. Humphreys,* for plaintiff in error.— On question of limiting time for argument: *Dille v. State,* 34 Ohio St. 61; *Williams v. State* (Ga.) 27 Am. Rep. 412; *Meredeth* v. *People,* 84 Ill. 480; *Hunt v. State,* 15 Am. Rep. 677.

*Charles West,* Atty. Gen., and *Charles L. Moore,* Asst. Atty. Gen., for the United States.

BAKER, Judge. (after stating the facts as above). The accused alleges in his assignment of errors:

(1)   That the court erred in overruling his motion for a new trial; there not being sufficient evidence in this action to warrant a conviction.

(2)   The court erred in refusing to instruct the jury as follows:

"No. 1. In this case the prosecution seeks the conviction of the defendant by what is known in law as 'circumstantial evidence', and you are instructed that, before you would be warranted in convicting the defendant, you must find beyond a reasonable doubt the facts upon which the prosecution relies to constitute the chain of circumstantial evidence. The true test by which to determine the value of circumstantial evidence in respect to its sufficiency to warrant a conviction in this case is not whether the proof establishes circumstances which are consistent or which coincide with the hypothesis of guilt of the accused, but whether the circumstances satisfactorily established are of so conclusive a character and point so unerringly to the guilt of the accused as to exclude every reasonable hypothesis of his innocence."

(3)   The court erred in refusing to give instruction No. 2, which reads as follows:

"No. 2. The court instructs you that the force of circumstantial evidence being exclusive in its character the mere coincidence of a given number of circumstances which the hypothesis of guilt or that they would account for or concur with or render probable the guilt of the accused is not a reliable or admissible test, unless the circumstances are of such a degree of cogency and force as in the order of natural causes

and effect to exclude to a moral certainty every other hypothesis except the single one of guilt. The proof must not only coincide with the hypothesis of guilt, but it must be inconsistent with every other rational conclusion."

(4) The court erred in refusing to give instruction No. 3, as follows:

"No. 3. When a conviction is sought alone upon circumstantial evidence, the circumstances taken together must be such as to be incapable of explanation upon any other rational hypothesis but that of the defendant's guilt."

(5) The court erred in refusing to give instruction No. 4, as follows:

"No. 4. The court instructs you that in a case like this, where a conviction is sought upon circumstantial evidence, the circumstances must be proved to your entire satisfaction, and when the circumstances are established they must point conclusively to the person charged and must be inconsistent with any other reasonable hypothesis."

(6) The court erred in refusing to give instruction No. 5, as follows:

"No. 5. If there is a reasonable doubt in your minds as to whether the animal killed at defendant's, which the government witness says he saw, then you will acquit the defendant."

(7) The court erred in instructing the jury as follows:

"Larceny is the felonious stealing, taking, carrying, riding, or driving away the property of another. It is the felonious taking; that is, a wrongful and corrupt taking."

(8) The court erred in the following instruction:

"The defendant's plea in this case is that he is not guilty. He goes into the trial of this case presumed to be innocent. He is clothed with this presumption, and it remains with him until you find by the proof beyond a reasonable doubt that he is guilty."

(9) The court erred in instructing the jury as follows:

"The defendant has gone on the witness stand, and he is a witness in his own behalf, and you weigh his testimony by the same rules whether his statements are reasonable and whether he is interested in the result of the trial."

(10) The court erred in the following instruction:

"The government must make out its case of the guilt of the

accused beyond a reasonable doubt. That does not mean any doubt, and it does not mean some doubt. The government is not required to prove it to a mathematical certainty that the defendant is guilty, but must prove to a moral certainty, so after you consider and weigh the testimony in this case, if you are morally certain the defendant is guilty from that testimony, then you have no reasonable doubt, and you should convict the defendant."

(11) The court erred in instructing the jury as follows:

"You take each circumstance and each item of testimony that the witness has detailed upon the witness stand and each and all of the witnesses, and consider and compare all of it together, and after hearing all of the testimony and weighing it, if you are morally certain the defendant is guilty, you should render a verdict of guilty against him, and if you are not morally certain you should acquit him."

(12) The court erred in refusing to instruct the jury, as requested by defendant, as follows:

"The presumption of innocence remains with the defendant throughout the trial of the case, but may be overcome by evidence that satisfies the jury beyond a reasonable doubt of the guilt of the defendant."

(13) The court erred in refusing to charge the law of circumstantial evidence, as requested by the defendant.

(14) The court erred in limiting the time of the defendant's counsel to argue the case to the jury to 35 minutes.

(15) The court erred in requiring the attorney for the defendant, while he was arguing the case to the jury, to desist from further argument, on account of having consumed 35 minutes in argument.

(16) The court erred in assessing punishment of the defendant at a period of two years; said punishment being excessive, cruel, and unwarranted in this case.

The first error contended for by the accused is that the court erred in overruling his motion for a new trial, for the reason that the evidence is insufficient to sustain the verdict of guilty. We have carefully read all the evidence, which we find to be, in substance, as follows: The animal alleged to have been stolen was a steer belonging to D. N. Robb, as charged in the indictment.

and had for some time ranged from 2½ to 6 miles south and east of Atoka on Boggy creek, near the farm of accused. Mr. Robb's brand was three v's with a bar under them. In addition to the brands, he had two marks, consisting of a single bob under each ear; the ears being split in and dropped down on each side. A hide branded with Mr. Robb's brand, as above described, minus a part of the head portion, and the mark on one ear cut off, was sold by "a red headed man" named Jule Atherton, to Julius Haas, a dealer in hides at Atoka, on Saturday, August 18, 1906. Mr. Robb positively identified this hide as being from his animal. This hide was, by Mr. Robb, found at the hidehouse of Mr. Haas, and is the same hide testified to by the witnesses Haas and Fletcher. Witnesses for the government testified to seeing meat from an animal which had just been killed at the house of the accused on a Saturday morning in August, 1906, with parts of the head portion of the hide missing, and to seeing the meat and hide placed by Atherton, in the presence of the accused, into a wagon, and the accused having seen Atherton drive away from the house of the accused with the meat and hide. The accused, testifying in his own behalf, said: He had, himself, shot and killed the animal with a 38 Winchester rifle, and that he and Atherton had worked until nightfall in dressing and skinning it, but on account of darkness overtaking them they could not finish the work that night. The next morning they went to finish it, and found the head had been fly-blown, and for that reason cut off the head and threw it away. That he had, for wages, hired Atherton to help him slaughter the animal and sell the meat by peddling it out, and that Atherton received $3.15 for the hide and that Atherton had sold part of the meat, realizing therefor $12 or $13. That he let Atherton keep the balance of the meat. That Atherton was going to sell the hide in Atoka if he could cross Boggy creek, and that he knew Atherton had but one hide in the wagon when he left his house that morning. The accused also testified that the animal he slaughtered was a red heifer that had been brought to his corral by one of the government witnesses

named Ben Pelph, and that it had been brought to his corral on the same day it was killed, at 4 or 5 o'clock in the evening, and that said animal was branded with a half-circle cross. The witness Ben Pelph testified that the accused called on him at the home of Tom Robertson at Peck, about 10 o'clock at night, after the accused was arrested in this case, and urged him to give testimony favorable to accused in this case; and, upon being asked by Pelph why he had not burnt the hide, the accused replied that he had told Atherton to throw it into the creek, but that Atherton was so saving that he wanted to sell it and save $2. The witness Charley Harris testified that the accused tried to persuade him to give testimony favorable to him, and to the effect that he (Harris) had seen the animal killed at the place of the accused, and that it was a deep red heifer, coming three years old branded with his brand, a Roman cross, when, in fact Harris knew nothing about the killing of the animal in question.

When the record shows that there is evidence which reasonably supports the verdict, and such a verdict is sustained by the court in refusing to grant a new trial, this court will not reverse the case on question of fact. The evidence in this case is sufficient to sustain the verdict and the judgment rendered thereon. It must therefore follow that the first ground of error relied on by the accused in his motion for a new trial must fail, as the court below committed no error in overruling the motion for a new trial on this ground.

The second, third, fourth, fifth, eleventh, and thirteenth assignments of error insisted on by the accused relate only to instructions requested by the accused upon the question of circumstantial evidence, and were refused by the court below. All of these requested instructions were asked for by the distinguished counsel for the accused upon the theory that the prosecution relied upon circumstantial evidence for a conviction. It therefore becomes important to examine the record as to the relative character and extent of the evidence. From a careful examination of the facts, this court is of opinion that the prosecution did not

wholly rely on circumstantial evidence for a conviction in this case. Much of the testimony is of a direct character. For instance, the accused took the witness stand in his own behalf and swore, in substance: That he himself killed a beef animal at his place on Friday evening about the 17th of August, 1906, using a 38-caliber Winchester rifle, shooting it in the head; that he helped Atherton skin and dress it until dark on said evening, and, not completing the work, finished it on Saturday morning, and to seeing the beef and hide placed in the wagon by Atherton, and seeing him start.away with it, and to having received from Atherton $3.15, proceeds of the sale of the hide, and $12 or $13 from the sale of the beef; that he had given Atherton the balance. The accused swears that the animal he killed on the Friday referred to was his, that it was a red heifer, coming three years old, and was branded with a half-circle cross. He also testified that the animal he killed was the same one that Ben Pelph had brought to his house that same evening. Pelph testified: That, while he did take a heifer to the home of the accused, he did so a week or ten days prior to the time the accused swore he killed the animal which Atherton assisted him in skinning and dressing; that the accused solicited him to swear in his behalf, telling him. he had been pulled for killing one of Robb's steers; that in a conversation which took place at the home of Tom Robertson, near Caloway, witness told him that a man as old as the accused should have burned the hide, or thrown it in the creek, to which the accused replied that he had told "that fellow to .throw it in the Boggy." This testimony is not circumstantial, but direct, and shows that the accused knew about the hide which Atherton sold to Haas, and which was identified by Robb and others and is very strong evidence against the accused. The accused also told Pelph that Atherton was too saving to throw the hide in the Boggy, that he wanted the money. The testimony of witness Charles Harris is direct and not circumstantial, because he swears to statements made by the accused to him of a very damaging character. against the accused. He wanted Harris to help

him out of his trouble, by having him swear and testify that he (Harris) was present when an animal was killed on the Friday in August testified to, and about the killing of which there is no controversy, and that the animal then killed was a red heifer, having the brand of the accused upon it, when, as a matter of fact, Harris was not there at the time the animal was killed, and the accused knew it.

It is true that some of the testimony is of a circumstantial character, but the prosecution by no means relied wholly on circumstantial evidence. Therefore, if the contention of the accused that the government relied wholly on circumstantial evidence for a conviction is not sustained by the record, then the second, third, fourth, fifth, eleventh, and thirteenth assignments of error are not well taken, and the instructions asked for by the accused and refused by the court were therefore properly refused. We have carefully examined all the authorities cited by the accused, and we find that in a majority of the cases the courts held: Where the inculpatory proof is wholly circumstantial, the judge should charge the law applicable to circumstantial evidence. Therefore, for the reasons stated, the authorities cited by plaintiff have no application to the case at bar, as the testimony relied on by the government is not wholly circumstantial in its character. From the proof in this case, as is disclosed by the record, the charge of the court with reference to circumstantial evidence while imperfect, was, in the opinion of this court, sufficient, when the court charged the jury as follows:

"You take each circumstance and each item of testimony that the witness has detailed upon the witness stand and each and all of the witnesses, and consider and compare all of it together, and after hearing all the testimony on it, if you are morally certain the defendant is guilty, you should render a verdict against him, and, if not, you should acquit him."

We agree with counsel for the accused that, if the government in the case at bar wholly relied upon circumstantial evidence for a conviction, the court should then have charged the jury more fully upon the subject of circumstantial evidence.

The next error insisted upon by the accused is that the court's instruction on the presumption of innocence was not correct. It is as follows:

"The defendant's plea in this case is that he is not guilty. He goes into the trial of this case presumed to be innocent. He is clothed with this presumption, and it remains with him until you find by the proof beyond a reasonable doubt that he is guilty."

The accused contends that the instruction on the presumption of innocence is faulty, because the court did not instruct the jury that the presumption of innocence remains with the accused throughout the trial, and goes with him to the jury room. It is true the court in this case did not say, in its instructions in so many words, that the presumption of innocence remains with the accused and goes with him to the jury room, but, in fact, did not limit the application of the rule to any particular time of the trial, only that such presumption of innocence remained with the accused until the jury found by the proof beyond a reasonable doubt that he is guilty. The jury could not have misunderstood this instruction. The instruction clearly said to the jury that the presumption of innocence would abide with the accused until it was overcome by proof beyond a reasonable doubt of his guilt. Nothing more could within reason be asked by the accused on this subject. We cannot see how the jury could have been misled or mistaken by this instruction. On the contrary, we think it was abundantly correct, and properly and fairly protected the rights of the accused.

The sixth assignment of error grows out of the refusal of the court to give the following instruction, requested by the accused:

"If there is a reasonable doubt in your mind as to whether the animal killed at defendant's, which the government witness says he saw, then you will acquit the defendant."

We do not think the accused was entitled to this instruction. It was the court's duty to instruct the jury generally upon the question of reasonable doubt. This the court did. It was there-

fore not error to refuse to give a special instruction applicable to a particular fact, or state of facts proved in the case.

In the case of *Brown v. State,* 23 Tex. 195, the court say:

"The only rule which can be regarded as a practical demonstration of the law is that the legal test is a sufficiency of the evidence to satisfy the understanding and conscience of the jury, and to produce in their minds a moral certainty of the guilt of the prisoner to the exclusion of every reasonable doubt. When the jury is substantially informed of this requisite, as was done in this case, the law is satisfied."

In *Robert Barr, Jr., v. State,* 10 Tex. App. 507, in the third syllabus, the court say:

"The doctrine of reasonable doubt applies to the general issue of guilty or not guilty, and it was not error to refuse a special instruction which attempted to apply it to each and every fact in proof."

The seventh assignment of error is directly to the definition of "larceny," as given by the court to the jury in this case, which is:

" 'Larceny' is the felonious stealing, taking, carrying, riding, or driving away the property of another. It is the felonious taking; that is, a wrongful corrupt taking."

The only reason for the contention that this definition is not correct is that it leaves out material requirements, and that larceny is:

"The fraudulent taking and carrying away the personal property of another without his consent, with the intent to convert it to his own use, or to deprive the owner of the use of it."

At the time this case was tried in the court below, the laws of the state of Arkansas were in force in the Indian Territory. Section 965, Ind. T. Ann. St. 1899, reads as follows:

"Larceny is the felonious stealing, taking and carrying, riding or driving away the personal property of another."

The definition complained of in this case was in the exact words of the statute, except the court added: "It is a felonious taking; that is, a wrongful and corrupt taking." The addition of the words just quoted do not add much, modify, or destroy

the definition of larceny as given, nor did the added words in any way prejudice the rights of the accused.

The eighth assignment of error complained of refers to the action of the court in refusing to give the following instruction:

"The presumption of innocence remains with the defendant throughout the trial of the case, but may be overcome by evidence that satisfies the jury beyond a reasonable doubt of the guilt of the defendant."

The court having, in its general charge, instructed the jury that the accused went into the trial of this case clothed with the presumption of innocence in his favor, and that that presumption remained with him until the finding by proof beyond a reasonable doubt that he was guilty, is a proper charge and sufficiently protected the rights of the accused, and therefore did not commit error in refusing said instruction.

The ninth assignment of error is urged against the following instruction given by the court:

"The defendant has gone on the witness stand, and he is a witness in his own behalf, and you weigh his testimony by the same rules whether his statements are reasonable and whether he is interested in the result of the trial."

While this is not clear and concise, still we cannot, in the light of the whole charge, see how the substantial interests of the accused were prejudiced by this instruction and we do not agree with the interpretation placed upon it by the able counsel for the accused to the effect that said instruction might be considered by the jury to mean that more weight was to be attached to the fact that the defendant was charged with the crime. The jury, as a matter of law, had the right to take into consideration the fact that the defendant was interested in the result of the case, and that his testimony should be weighed in the light of his interest, and we do not believe the instruction complained of was prejudicial to the rights of the accused.

In assignments of error Nos. 10 and 12, it is insisted that the court erred in its instruction to the jury, as follows:

"The government must make out its case of the guilt of the

accused beyond a reasonable doubt. That does not mean any doubt, and it does not mean some doubt. The government is not required to prove it to a mathematical certainty that the defendant is guilty, but must prove it to a moral certainty, so, after you consider and weigh the testimony in this case, if you are morally certain the defendant is guilty from that testimony, then you have no reasonable doubt, and you should convict the defendant."

It is extremely dangerous for trial courts in instructions to juries to undertake to define a reasonable doubt, and we agree with the learned judge who charged the jury in the case of *Lenert v. State* (Tex. Cr. App.) 63 S. W. 563, when he said:

"That the words 'reasonable doubt' were words in common use, and the jury could understand them as easily as the court, and that the court had a reasonable doubt as to whether or not he could, under the law, charge them as to their meaning."

It is to be regretted that trial courts do not adopt the wise course pursued by the judge in the case just cited. This court believes that, at this enlightened age, jurors generally will understand the meaning of the words "reasonable doubt." Therefore trial courts, in the opinion of this court, would save themselves and the appellate courts much trouble by instructing the juries upon reasonable doubt as defined by the statute, and that any attempt at leaving this shore of safety means their getting into deep water, from which it is often difficult to extricate the definitions of "reasonable doubt" as given by them.

The learned counsel for the accused urges that the definition of "reasonable doubt" just quoted was weakened, but does not give this court the benefit of his reasons therefor, except he says that the jury might very well conclude from said instruction that it was not necessary for them to find beyond such reasonable doubt as they might ordinarily possess, but that, if they were morally certain after eliminating doubts that might arise, they could convict the defendant. Again we are obliged to disagree with counsel for the accused that the definition of "reasonable doubt," as given by the court in this case, is prejudicial to the substantial rights of the accused. We do not think that counsel for the ac-

cused will insist that the words "morally certain," as used in the definition given by the court, would in any way weaken the same, for the reason that courts have many times used the words "reasonable doubt" and "morally certain" interchangeably.

The writers of legal dictionaries define "moral certainty" to mean that degree of certainty which will justify a jury in grounding on it their verdict. Bouvier's dictionary defines "moral certanty" to mean:

"A certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it. A certainty beyond a reasonable doubt."

Black's Law Dictionary defines "moral certainty" as follows:

"In the law of criminal evidence * * * that degree of assurance which induces a man of sound mind to act without doubt upon the conclusion to which it leads."

Burrill, Circ. Ev. § 189, reads:

"A high degree of impression of the truth and fact falling short of an absolute certainty, but sufficient to justify a verdict of guilty, even in a capital case."

Chief Justice Shaw, in the case of *Commonwealth v, Webster*, 5 Cush. (Mass.) 295, 52 Am. Dec. 711, speaking of reasonable doubt, says:

"What is 'reasonable doubt'? It is a term often used, probably pretty well understood, but not easily defined. It is not mere possible doubt, because everything related to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge."

Many cases could be cited in which the words "moral certainty" words "that it does not mean any doubt and it does not mean words "that its does not mean any doubt and it does not mean some doubt" to supply the weakening effect of the definition, if in fact the instruction in which connection said words are used is in fact thereby weakened, and the substantial rights of the accused thereby prejudiced and abridged. To determine whether or not

the words complained of have the effect claimed by the accused, it is both proper and necessary that we take into consideration the whole charge as given in this case. The part of the charge referring to "reasonable doubt," omitting instruction No. 10, reads as follows:

"The defendant's plea in this case is that he is not guilty. He goes into the trial of this case presumed to be innocent. He is clothed with this presumption, and it remains with him until you find by the proof beyond a reasonable doubt that he is guilty." "You take each circumstance and each item of testimony that the witness has detailed upon the witness stand and each and all of the witnesses, and consider and compare all of it together, and, after hearing all of the testimony and weighing it, if you are morally certain the defendant is guilty, you should render a verdict of guilty against him and if you are not morally certain you should acquit him."

These instructions being given both before and after the words which are alleged by counsel for the accused to have weakened the charge upon reasonable doubt, we think the contention of counsel is not supported, and the charge as given was not weakened by instruction No. 10 complained of, and that the rights of the accused were in no way prejudiced thereby. In fact, it might well be contended that the words complained of rather enlarge than prejudice the rights of the accused.

Assignment of error No. 14 complains of the court below, and says that the substantial rights of the accused were disregarded by the court, by limiting counsel for the accused to 35 minutes in the argument of the case. Section 1606, Ind. T. Ann. St. 1899, which was in force in the jurisdiction at the time this case was tried in the court below, provides for the right of argument by counsel in criminal cases; but we are unable to find a statute authorizing the trial court to limit the time of such argument. Therefore it was within the sound discretion of the presiding judge to reasonably limit the length of time for argument by counsel for the accused, and unless the record shows an abuse of this discretion the cause will not be reversed by this court. We approached the consideration of this assignment of error with

a distinct aversion to the limiting of time of argument in criminal cases, and for that reason gave this branch of the case careful consideration. We have examined many well considered and ably written opinions upon this subject, a few of which we will refer to herein.

Chief Justice Gilmore, in *Dille v. State,* 34 Ohio St. 617, 32 Am. Rep. 395, says:

"The constitutional right of any person accused of felony to appear and defend in person and with counsel cannot be denied, or its exercise unreasonably abridged, but the court may limit the argument of the accused or his counsel, provided that the accused is not thereby deprived of a fair trial. The only question that will be introduced in this case is: Did the court err in limiting the two counsel of defendant to 30 minutes for the argument of the case to the jury? The question is an important one. The three most important constitutional rights of a person accused of felony are: (1) A trial by jury; (2) compulsory process for obtaining witnesses in his favor, and (3) the assistance of counsel on his trial. These are secured to him in proper cases not only in federal but also in the state court by constitutional provisions. * * *"

In *Meredeth v. People,* 84 Ill. 479, the court says:

"The argument of the cause is as much a part of the trial as is the evidence, and the party is entitled to the hearing of the evidence. * * * *"

In *Williams v. State,* 60 Ga. 367, 27 Am. Rep. 412, it is held:

"In the trial of a felony, whether the prisoner is heard through one counsel or two, the length of argument is not a matter for predetermination by the court. As argument progresses the court may confine the range of it to the facts and law of the case, but so long as counsel speaks to the point, proceeds in good faith, and wastes no time, the court should forbear to interfere, but leave the limits of the speech to the discretion of the speaker until it is manifest that the discussion is complete or the subject exhausted."

In *State v. Collins,* 70 N. C. 251, 16 Am. Rep. 771, it was held that the judge presiding had the right to regulate the arguments by reasonable rules and limitations, and that restricting counsel upon the trial of an indictment for a capital felony to one

hour and a half was not so unreasonable as to justify granting a new trial.

In section 923, Thompson on Trials, the author says:

"The rule, both in civil and in criminal cases, is that the courts have power, in the exercise of a sound discretion, to impose reasonable limitations upon the time to be allowed to parties for argument by counsel, which discretion will not be revised on error or appeal except in cases of manifest abuse. On the one hand, a reasonable exercise of this power is upheld as being absolutely necessary to enable the courts to dispatch the public business; on the other hand, a plain abuse of it, which has resulted in denying to an accused person the constitutional right of defense by counsel, or of unreasonably abridging this right, will afford ground for setting aside the judgment in a criminal case and granting a new trial. * * * "

In Missouri it is held, in a criminal prosecution for cutting timber upon school lands, no abuse of discretion appeared in an order of the trial court limiting the time of argument allowed the counsel for the defendant to 15 minutes. The court in deciding this case, without referring to the source of its information, states the fact that, Cicero having been allowed but half an hour to defend Caius Rabirius before the tribune of the people on a charge of murder, a quarter of an hour allowed to a modern orator in a petty case of cutting down timber on school lands was sufficient.

The trial court in this case, knowing full well the oratorical power and convincing logic of the distinguished counsel for the defense, concluded that he could do full and ample justice to the cause of the accused within the time limited, and, taking into consideration the entire record, it fails to disclose that the limit placed upon argument in this case was an abuse of discretion. We are therefore, in the light of the great weight of authorities, obliged to hold that no prejudicial error resulted to the accused from such limitation. We cannot, however, refrain from expressing the opinion that it is extremely dangerous to limit counsel in advance of the argument, and we believe that trial courts should exercise discretionary power in this regard with great care and caution, and no unreasonable limitation of time should be attempted, and

that this discretion should be exercised with due regard for all the circumstances of the case. This court will not hesitate to reverse the judgment of the trial court if the record discloses an abuse of this discretion. All steps in the trial of a criminal case should be so taken as to safeguard all the substantial rights and interests of the accused, to the end that the accused will be accorded in all respects a fair and impartial trial.

It is urged in the remaining assignment of error that the court erred in fixing the punishment in this case; in other words, that the punishment is excessive, cruel, and unwarranted. The law gives the trial court the right to fix the punishment within the limitations fixed by statute when the jury failed so to do in the verdict. In grand larceny cases the punishment prescribed is from one to five years, giving the trial court discretionary power to fix the punishment within such limits. The trial court heard the testimony, had the means of taking into consideration all the facts and circumstances, and is therefore better enabled to determine the punishment than this court. We are unable to conclude from the record that the court abused its discretionary power in assessing the punishment at two years. In the case of *Clampitt v. United States,* 6 Ind. T. 92, 89 S. W.666, an Indian Territory case, the accused was prosecuted under section 971 of the Indian Territory Annotated Statutes of 1899, which provides:

"Every person who shall steal any kind of cattle shall be guilty of a felony, and upon conviction thereof be imprisoned at hard labor in the penitentiary for any time not less than one year or more than five years."

The court held that the punishment named in the sentence conforms to the statute and is not cruel and unusual punishment.

This court finding no harmful or prejudicial error, it follows that the judgment of the court below should be, and the same is, affirmed, at the cost of the accused, and the sheriff of Atoka county is hereby ordered to execute the judgment of the court below without delay.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.