## BRUMLEY v. STATE.

No. A-11637. Oct. 22, 1952.

(249 P. 2d 471.)

S. S. Lawrence, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, J. Defendant, Audie Leon Brumley, appeals from a conviction before a jury in the district court of Tulsa county, of the charge of burglary, second degree, second and subsequent offense. The jury left the punishment to be fixed by the court, who assessed the penalty at 15 years in the State Penitentiary.

For reversal counsel for defendant argues the case under the lead statement that:

"The defendant respectfully shows to the court that there is not a single bit of positive proof in this record as to the guilt of the defendant in breaking into and entering the place alleged to have been burglarized, namely, a small drug store located in the city of Tulsa at 910 West Admiral Street. All the proof is entirely circumstantial and is not at all clear as to circumstances."

It is true, from a review of the testimony, that the evidence offered by the state was entirely circumstantial. There was no direct evidence that defendant broke and entered the drugstore at 910 West Admiral street, Tulsa, shown to have been burglarized. However, a newsboy, Harold Ladd, testified to seeing the defendant walking away from such drugstore around 4.00 a.m. on December 17, 1950. Defendant was about 30 feet away from the drugstore and walking west on Admiral. Witness was riding his bicycle and as the pedestrian got under a street light at Nogales witness rode within five or six feet and got a good look at him. Witness was on his way to awake another newsboy, and in about five minutes returned along Admiral street, and when he got opposite Moore's Drug Store he noticed that the plate glass in the front door had been broken out sufficiently for a person to step through. He noticed the same pedestrian coming back up Admiral street and across from the Moore Drug Store, so witness rode down to his newspaper manager, a Mr. Kilgore, and he and another newsboy named Jim Hays got in Mr. Kilgore's car with him and they drove back to the drugstore to see about the door. Mr. Kilgore phoned the police. But as they were on their way to phone witness Ladd saw the man in question walking down toward East First street on Guthrie and when the pedestrian got under the street light they drove close and witness pointed him out to Mr. Kilgore and the Hays boy. Later witness from a number of men at the police station pointed out the defendant as being the man seen within a few feet of the burglarized drugstore. Witness stated that the last time he saw the defendant that night, said person was holding his wrist as if it were cut.

Both Kilgore and the newsboy Jim Hays identified Audie Leon Brumley as the person pointed out to them walking a short distance from the Moore Drug Store.

Al H. Storey, a merchant policeman, testified that he had a police radio on his car and that he was at Denver and Archer streets, Tulsa, when he heard the broadcast about the Moore Drug Store being broken into, and that the burglar had gone east on foot. Storey drove east on First street and saw the defendant in an alley between Frisco and Elwood. This was within ten to fifteen minutes after he got the call, and Walter Bales was in the car with him. Witness observed defendant as he came out of the alley and he answered the description as to dress and appearance of the person they were looking for, so he stopped him, called him to the car and questioned him. Defendant said he had just come from a preview. It was about 5:00 a.m., and witness heard something break, so he got out of the car and found that defendant had dropped a long empty container. Defendant stated that a fellow gave him some articles to sell, and the officer looked in the alley and found some more empty boxes, one box being an Eversharp pen and pencil set box. The officer stated that defendant had a couple of cut places on

his hand that were bleeding and claimed that he had been in a fight at a beer joint; that defendant was pretty well under the influence of intoxicating liquor. Witness took defendant to the drugstore where a number of other officers were then congregated and these officers searched the defendant, and found an Eversharp set on him, a couple of lighters, and an envelope with some films in it. His billfold contained two or three dollars in currency, but no silver. Witness was corroborated by two other officers.

Harry H. Moore testified that he owned the Moore Drug Store; that he was called there at around 5 o'clock in the morning of December 17, 1950, and found that the plate glass in the front door had been broken, and there were blood stains on the glass. As best witness could tell, there were a number of articles missing, including a gold Evans lighter, a St. Regis wrist watch, a Regent lighter or two, an Eversharp pen and pencil set. about $7.80 in change including two one dollar bills from the cash register, and some films in an envelope upon which he had written. He positively identified the envelope and his handwriting thereon, and the films. The other articles found on defendant answered the description of articles he missed, though no silver was found on the person of the defendant, nor a watch nor fountain .pen.

The defendant testified, stating that he lived with his mother at 1805 West Archer and worked for the Hale Halsell Wholesale Grocery in the warehouse; that he was released from the State Penitentiary at McAlester on November 22, 1950; that he got paid on Friday but worked until noon Saturday; that he gave his mother his pay except about $16 and that around 2 p.m. he went to town and visited one beer place after another until they closed at 2:00 a.m.; that he took his girl home in a taxi to 128 North Maybelle, leaving around 3:30 a.m., and started up town, then turned around to go home but thought of getting into trouble with his mother for coming home so late after drinking, so he turned around and started to a cafe at Second and Denver streets, but was arrested before he got there. Defendant claimed that he purchased the articles found on him by the officers for $3 from a man who came down from the Tennessee Rooms, near the alley where he was arrested; that the man had not been gone five minutes in his car when the officers came. Defendant stated that he had stepped into the alley to wet. Defendant admitted passing the Moore Drug Store but stated that he lived in the neighborhood. He denied noticing that the glass had been broken out of the front door. He did not remember seeing the newsboys. Defendant admitted pleading guilty to a number of crimes once in Missouri for obtaining money under false pretenses, twice in California and once before in Oklahoma.

Counsel's argument as to the sufficiency of the evidence is not helpful simply for the reason that an accused may be convicted on circumstantial evidence. Welty v. State, 39 Okla. Cr. 85, 263 P. 177; Story v. State, 92 Okla. Cr. 131, 221 P. 2d 682. The weight, credibility and probative effect is for the jury. Zeligson v. State, 43 Okla. Cr. 24, 276 P. 791. The jury are the exclusive judges of all questions of fact. They may base their verdict on circumstantial evidence on one side and reject positive evidence on the same point on the other. Webb v. State, 54 Okla.Cr. 150, 16 P. 2d 261.

That defendant passed directly by the burglarized drug store around 4:00 a.m. the night it was forcibly entered is not denied; that he was found within an hour with part of the missing articles, at least one item being positively identified as coming from the store is not denied. The defendant had fresh cuts on one hand. The broken glass in the door had blood stains. Defendant attempted to explain these circumstances, but in testifying he was subject to cross-examination and it was brought out that he had previously pleaded guilty to charges of fraud. Such disclosures had a bearing on the credibility of his testimony, and properly so.

There is one matter that the attorneys and the court appear to have overlooked. The defendant was entitled to have the jury instructed on the law of circumstantial evidence. This was not done. For the court to have refused to give such an instruction would have constituted reversible error. Knight v. State, 73 Okla. Cr. 107, 118 P. 2d 255, 256. But where no request is made, as here, such failure will not be sufficient to cause a reversal. Teague v. State, 58 Okla. Cr. 239, 52 P. 2d 91; Strong v. State, 53 Okla. Cr. 99, 8 P. 2d 76; Mandrell v. State, 95 Okla. Cr. 239 244 P.2d 345.

The jury was unable to agree on the punishment. It may be that if they had been instructed as defendant was entitled to have had them instructed, such an instruction would have enabled the jury to settle some question that apparently was bothering them. It would probably be faulty reasoning to conclude that this instruction, if it had been given, might have caused the jury to assess the punishment rather than to have left it to the court, or that they woud have assessed a lighter punishment than the 15 years assessed by the court. They might have assessed a greater punishment; or they might have acquitted defendant. Burglary in the second degree is punishable by imprisonment for any term not less than two years nor exceeding seven years, Tit. 21 O.S. 1951 § 1436 (2), but where the offense is a second and subsequent offense, the imprisonment must be for any term not less than ten years.

Regardless of the fact that the defendant herein may be termed an habitual criminal, he was not wholly bad. He was employed, lived with, and was helping support his widowed mother. Our conscience dictates and impels us, due to circumstances set out, to reduce the sentence imposed from a term of 15 years in the State Penitentiary, to a term of 10 years in the State Penitentiary. We think justice requires this. Tit. 22 O.S. 1951 § 1066.

As so modified, the case is affirmed.

BRETT, P. J., and JONES, J., concur.