**Herman Eugene WING, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

No. A–12124.

Criminal Court of Appeals of Oklahoma.

Feb. 23, 1955.

Rehearing Denied April 6, 1955.

W. C. Henneberry, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Herman Eugene Wing was charged jointly with one Max Hobson by amended information filed in the district court of Cherokee County with the crime of burglary in the second degree; the parties were tried separately. Defendant Wing was found guilty and his punishment fixed at two years confinement in the State Penitentiary. Codefendant Hobson on trial was also found guilty. See the case of Hobson v. State, Okl.Cr., 280 P.2d 735.

The information had first charged burglary with explosives, a crime carrying punishment of a minimum of 20 years in the penitentiary, and a maximum of 50 years upon conviction, Tit. 21 O.S.1951 § 1441, whereas the crime as charged in the amended information carries punishment at not less than two years, and not more than seven years. Tit. 21 O.S.1951 § 1436(2).

One of the grounds advanced for reversal is the contention that the verdict of the jury is contrary to the law and the evidence, and that the court erred in not sustaining defendant's demurrer to the evidence, and in refusing to direct a verdict of acquittal. We shall treat this proposition first.

We have carefully read the entire record and find that though defendant's conviction came about by circumstantial evidence, that the conviction rests on evidence of circumstances from which a reasonable and logical inference of defendant's guilt clearly arises and which excludes any reasonable hypothesis except guilt, and though the evidence is conflicting, under such circumstances, the verdict of conviction will not on appeal be disturbed on the ground of insufficiency of the evidence. Sears v. State. 79 Okl.Cr. 437, 156 P.2d 145; Griffin v. State, 79 Okl. Cr. 85, 151 P.2d 812; Doty v. State, 88 Okl.Cr. 381, 203 P.2d 444; Gower v. State, 94 Okl.Cr. 184, 237 P.2d 162; Brumley v. State, 96 Okl.Cr. 97, 249 P.2d 471; Heath v. State, Okl.Cr., 278 P.2d 553.

We shall summarize such evidence as seems pertinent for determination of the issues.

On Sunday morning of May 31, 1953, Oscar Norwood, the night watchman-constable at Hulbert, Oklahoma, in performance of his duties and while driving about the business district noticed a strange car parked in the street some 57 steps from the rear of Squyres' store. He went to the car and looked it over and said that it was a '49 green Ford, two-seated car. He saw a new canvas glove in the car, and a pair of trousers and a "T" shirt in the back seat. He also observed a flash light with a cracked lens. He noticed that the car bore an out-of-county license number, and witness said that he got the tag number and wrote it down in a little book. Shortly after this witness had driven on and parked in the middle of Main street, and heard an explosion, and he drove back to the green Ford, saw no one, so drove back up Main street and parked near the bank building, which was on the corner, and saw a man emerge from a three-foot passageway between Squyres' store and the Rogers Building. The man walked with a limp, and witness engaged him in conversation. Norwood identified a new straw hat later found near the bank corner and shown to have been stolen from the Squyres store that morning, and which witness stated was being worn by the man later identified as Max Hobson; and although the court ruled that witness might relate the conversation that he had with Hobson, this conversation was not related as witness was further questioned about the green Ford and got off on that subject. He said he again saw the green Ford, that it pulled out in the next block east while he was talking with Hobson, and witness got in his car and attempted to stop the Ford, but it was driven onto a gravel road and so much dust was

stirred up that witness gave up the chase and drove by the home of Deputy Sheriff Jim D. Rogers and asked him to help investigate what had been happening. Witness told the deputy about the green Ford, and returned to look for the crippled man he had been talking to near the bank corner. He drove back of the Squyres building and noticed the back door was open. He went in and discovered that the safe had been blown open, and there was a light on in the store, and he then drove around and found deputy Rogers. Witness did not remember whether he gave Rogers the tag number of the green Ford or not. But deputy Rogers telephoned Sheriff Wayne Cunningham at Talequah that there had been a burglary and gave the sheriff the tag number of the car as 56–2756.

Deputy Jim D. Rogers testified that as he was driving to the business district of Hulbert he saw a green Ford being driven at a high rate of speed, that it made a left turn from the main street or highway and turned north, and that he observed the tag number at that time. He followed the car for a short distance on the gravel road, but turned back to Hulbert, talked with officer Norwood and it was after such conversation that he telephoned the sheriff and gave him the description of the car, including the tag number. The gravel road led to Peggs near Locust Grove. Witness stated that later on in the day he again saw the green Ford in question and Sheriff Wayne Cunningham had possession of it, as well as the person of the defendant, who was under arrest.

Witness further testified to searching at certain points along the route of flight of the green Ford, and finding a pair of pants just over a wire fence in a field at a point 6½ miles northeast of Locust Grove near the end of a dead-end road, and about 75 steps from the home of a man named King. The pair of pants was received in evidence and inside the left pocket and at another place was stamped the name "Wing". Witness also stated that he found a pair of cowboy boots near the pants, and also a "T" shirt close by, just outside the fence. He also found at the same place a receipt in favor of the Squyres store for flowers, a watch, and in the ditch at the fence found four paper sacks, one containing pennies, one nickels, one dimes, and one quarters and half dollars.

Sheriff Cunningham testified that on the morning of May 31, 1953, at about 4:40 he got a call at Talequah from deputy Rogers at Hulbert. He stated that there was a gravel road going north from Hulbert to Peggs; and that Highway No. 82 runs in a northerly direction from Peggs to Talequah; that it was 19 miles from Talequah to Peggs. Witness further stated that officer Rogers gave him the description of an automobile and the route it was traveling, and that he then called the Highway Patrol station at Claremore and asked for a road block, and asked the local patrol at Talequah to go to Hulbert and stand by, and witness then drove rapidly to Locust Grove, and as he did so he noticed dust in low places along the gravelled road that intersects with Highway 82 near Peggs. The sheriff testified that he drove to Locust Grove and then made a "U" turn and drove back the way he entered town on Highway 82; and that after he went south and made the first turn east, about 75 to 100 yards, he saw a car coming and he put his car across the road and got out and stopped the approaching car, which was a light green '49 Ford; that he recognized the driver as the defendant Gene Wing, whom he had known since Wing was a young boy. He advised Wing about the burglary at Hulbert and that his car fit the description of the one fleeing the scene, and defendant said, "Wayne, you know it wouldn't be me, because I am working on the police force. I am a detective at Bartlesville." Witness stated that about that time he heard another car approaching, and he told Wing to "pull up" and witness got ready to stop the other car, and he looked and saw Wing's car tag for the first time, and saw it was a "56" tag, and called for him to stop, but Wing left at a high rate of speed and witness followed him for about 7 or 8 miles north and east of Locust Grove, just off Highway 82, but the dust was so bad witness was unable to keep very close to the car. Said he, "I overtaken him about six miles up 82 off of the road to the right and up in a

man's yard by the name of King, right up against his house where he turned around." He said this was a dead-end road. The sheriff arrested Wing and put the handcuffs on him and placed him in his car and made arrangements with Mr. King to leave Wing's car there until he could come back and get it, and he then took Wing to Locust Grove and put him in the city jail, got the city marshal and then went back and got Wing's car. Witness stated that Wing told him he wished he had taken the black top road, and if he had, the sheriff would not have caught him. Witness stated that he then took Wing and the green Ford to Talequah.

Sheriff Cunningham identified a flash light with cracked lens that he got out of defendant's car. He said that he drove to Hulbert and examined the Squyres store and found that entrance had been made by sawing a hole through the roof and ceiling. He identified pictures of the safe with door blown off; also pictures of the hole in the store roof.

On cross-examination the sheriff said that when he arrested Wing he found a rope and a pistol in his car, but no liquor or clothing.

Jimmy Ray Cooper, a 13-year old boy, testified that he and a companion on a Friday had been swimming in Little Spring Creek near his home, on Highway 82, which was a gravel road that goes in a north direction up to Locust Grove and intersects with Highway 33; that they were riding horseback and going to Locust Grove and as they rode along towards Highway 33 witness saw some money in the form of bills with a rubber band around them lying in a shallow ditch. He took the money to a local officer, Frank Consines, and they then took it to the bank at Locust Grove for safekeeping. That it amounted to $1,579.

Burl Earl Squyres testified that he was a merchant in Hulbert and was owner of the store that was burglarized the morning of May 31, 1953. That he closed and locked his store Saturday night, May 30, 1953, at about 8:30; that he counted the store money and put it in his safe and locked the safe; that there was $500 in twenty dollar bills, $880 in tens, $495 in fives, and $140 in ones, and $168.32 in silver and pennies. He identified all the items recovered by the officers as coming from his store, except the pants, "T" shirt, rope and cowboy boots that defendant later admitted belonged to him, but which items defendant claimed he left in his car on arrest and which he claimed someone had taken and "planted" on the roadside. Witness Squyres identified the receipt for flowers, the watch and the sacks containing the silver and pennies kept by him for the A. T. A. Lodge, and stated that the lettering on the sacks was in his handwriting. Witness also identified the straw hat as one stolen from his store the morning of May 31, and found on the streets of Hulbert near the bank. He also identified a sledge hammer and brace and bit found under a butane tank at the north entrance (front) of the opening between his store building and the Rogers Building. He identified other tools used in blowing open his safe. Witness also testified that about 4:00 o'clock in the afternoon of May 31, 1953 he received information of papers being scattered along the gravel road leading north to Peggs from Hulbert and he found some keys that came out of his safe that belonged to the lumber yard, found a hot check that belonged to his store, some charged notes and mortgages, and his son's discharge papers from the military service. He stated that on the following Friday he was called to Locust Grove and at the Bank there identified $880 in ten dollar bills as being the roll that he had placed a rubber band around and put in his safe. He also identified a package of $495 in five dollar bills as coming from his safe. He only found part of his twenty dollar and one dollar bills. He said that one twenty dollar bill was found on the floor in front of his safe.

The defendant testified and admitted that he owned the pants, or levis, the "T" shirt and cowboy boots found near the roadway by the officers, but claimed they were in his green Ford along with a pistol and rope at the time of his arrest by Sheriff Cunningham. He admitted trying to elude the sheriff, but claimed that he did so because of the pistol and some liquor he stated he

had in his car. The defense was in the nature of an alibi. Witness claimed that he was in Muskogee at 4:00 o'clock the morning of May 31, 1953; that he got there about 1:00 A.M. where he went to visit with his uncle, and he then planned to go to Locust Grove to invite his grandfather to go to Decoration Day exercises with him. He did not know exactly the direction from Locust Grove where his grandfather lived, but thought it northwest. He said he started back to Bartlesville through Fort Gibson and was approaching Locust · Grove when stopped by Sheriff Cunningham.

Defendant's 29 year old uncle, Leslie Arnold, testified that he was living at 611½ Lawrence, in Muskogee, on May 31, 1953 and that the defendant came to his home about 1:15 A.M., visited until about 4:30 A.M., invited him to Decoration Day exercises, and left.

Grover Daniels was offered as a witness. His testimony will be considered immediately.

Sheriff Cunningham and Deputy Rogers testified that the defendant Wing had stated in the county attorney's office soon after arrest that he drove to Muskogee to see his uncle, but could not arouse anyone, and then drove to Okay and over the Fort Gibson dam, and drove south to Fort Gibson.

From the evidence recited it is apparent that there was basis in the evidence to support the verdict of the jury. The jury did not believe the alibi, but were most lenient in the punishment assessed.

But counsel in brief advances additional propositions for reversal. It is contended that the court erred in refusing to permit him to introduce certain evidence for the purpose of impeaching the witness Oscar Norwood, the night watchman-constable, on the ground of having made conflicting statements relating to the license number of defendant's car.

It should be noted in considering this question that Deputy Rogers, who had been notified about the suspicious movements of a green Ford car, in driving to the business section of Hulbert saw the described green Ford and obtained the license number independent of Norwood, and telephoned the car description and license number to Sheriff Cunningham, who eventually took the car and driver in charge, and the car was later identified by both Norwood and Cunningham.

Oscar Norwood had testified on direct examination that shortly before the burglary he saw a car parked on the street in the block where Squyres' store was located, and as heretofore recited. On cross-examination witness was asked if he ever told anyone that he did not get the number of the car until after the defendant had been arrested and the sheriff had brought the car back. His answer was, "No, sir, I did not." He stated in substance that he had not made such statement to a single living soul.

Defendant called Grover Daniels as his first witness, and sought by this witness to impeach the testimony of Norwood on the ground that he made contradictory statements relating to the tag number of defendant's green Ford.

The court sustained an objection interposed by the State to the offer of proof on the ground that no proper predicate had been laid, and the defendant excepted to the ruling, and the action of the court is now assigned as reversible error. The cases cited by the defendant in support of his position by reason of the difference in the facts in such cases with the facts in the within case are inapplicable and not helpful here. The mode of proof in laying the predicate for the introduction of impeaching testimony is not treated in the cases cited, but is in the applicable case of La. Coss v. State, 25 Okl.Cr. 130, 219 P. 416.

Counsel had opportunity to meet the requirement of the trial court even if he felt that the trial court was somewhat too technical in his ruling, by simply recalling State's witness Norwood for further and additional cross-examination to comply with the ruling of the court (see Seabolt v. State, 59 Okl.Cr. 1, 57 P.2d 278 for full discussion for such procedure), but for some reason counsel did not elect to do so, but rather entered an exception to the ruling of the court as a basis for error.

As indicated, the general rule covering the issue raised is set out in La Coss v. State, supra [25 Okl.Cr. 130, 219 P. 416], where we said:

"A witness may be impeached by showing that he has made, out of court, statements material to the issues, contradictory of his testimony at the trial. Where the attention of the witness is first called to the time, place, and persons involved in the supposed contradictory statements in a manner sufficiently definite to reasonably refresh his recollection, and to call his attention to the substance of the subject-matter and statements upon which it is intended to impeach him, the predicate is sufficient."

The record discloses that the trial court did not rule that Norwood might not be impeached, but merely that counsel must first lay a proper predicate for impeachment.

We do not deem it necessary to go into an analysis of or to recite verbatim the questions asked State's witness Norwood, and the questions asked defendant's witness Daniels with reference to whether Norwood may or may not have gotten only the numerals "56–26—", rather than all of the numerals from the car tag on the green Ford automobile in question, shown to have been "56–2756". This for the reason that it is not clear that a proper predicate was laid in accordance with the rule above stated. But above this, we do not consider the question material to the issue. That is to say, the ultimate fact of whether Norwood did or did not get the complete car tag number rather than part of it, was not material to a determination of the issues, for the reason that the green Ford was not taken on account of any information furnished by the witness Norwood as to the tag number, but rather by reason of the complete tag number of the automobile in question being discovered independently by Deputy Sheriff Rogers and by him telephoned to Sheriff Cunningham. Witness Norwood never telephoned the sheriff or furnished him any information, or the car description, though Norwood did give Deputy Rogers the information that the car he had observed near the scene of the burglary and had later pursued, was a green 1949 Ford car. Norwood did not remember whether he gave Rogers the tag number or not, but whether he did or did not, the information that Rogers telephoned the sheriff was from his own personal observation and discovery, and the sheriff sought the car described by Deputy Rogers, found it, and the defendant was taken into custody by reason of being the driver. He was prosecuted by such fact and the additional facts already recited with reference to the stolen property.

The further proposition is advanced that reversible error was committed because of certain remarks made by the special prosecutor in his closing argument to the jury, in the following respect:

"Mr. Bliss:—'Where can I get some gasolene' the man said, the man who walks with a limp, the man who had that hat—

"Mr. Henneberry: I object to that.

"The Court: Did you make an objection?

"Mr. Henneberry: Yes.

"The Court: I will instruct you, Gentlemen of the Jury, as I have heretofore instructed you, that you are the sole judges of the evidence in the case. The statements of counsel do not constitute the evidence. They are comments on the evidence that has been introduced.

"Mr. Henneberry: And I now move for a mistrial.

"The Court: Motion is overruled.

"Mr. Henneberry: Exception."

Further in his argument the special prosecutor said:

"Oh yes, there are tricks to the trade. You men have had jury service and you know it has been customary for the State to get up and tell you at the very start of its case what it expects to prove, and it has been customary for the defense to get up immediately and say what we expect to prove, but they didn't do that in this case.

"Mr. Henneberry: If the court please, we object as being improper argument and improper comment.

"The Court: The jury is instructed that it is not necessary for the defense to follow right after the State has said what they intend to prove. They can reserve their statement, as they did in this case. All right.

"Mr. Henneberry: We except.

"Mr. Bliss: Certainly it is their privilege to do that, but it is not customarily done, but in this instance it was much better to hold back and hear all the State's evidence,—

"Mr. Henneberry: May we object to all of this line of argument?

"The Court: Yes, sir.

"Mr. Henneberry: Exception."

The question for decision is whether or not the argument complained of was prejudicial to the rights of the defendant. The remark, "Where can I get some gasolene?" attributed to the co-defendant Hobson, was outside the record, and improper. Norwood in testifying stated that he had a conversation with a man he later learned to be Hobson, at near the bank corner close by the Squyres store the early morning of May 31, 1953, but he never did state the conversation, as he commenced telling about the green Ford. The special prosecutor apparently was confused and perhaps had in mind evidence given at the preliminary, or statements made to him by Norwood, and at all events the trial court did not deem him in bad faith. The objection made by counsel was simply, "I object to that", without advising the court that there was no evidence to support such statement. And after the ruling of the court Mr. Bliss did not attempt to pursue that subject further.

The assertion that the second remark directed at defense counsel for reserving their opening statement to the jury could not, in our judgment, have prejudiced the defendant. Particularly is this true in view of the court instructing the jury that defense counsel had the right to reserve their opening statement.

In the case of Kennamer v. State, 59 Okl.Cr. 146, 57 P.2d 646, 648, we said:

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the state and the defendant have a right to discuss fully from their standpoint the evidence and the inferences and deductions arising from it. It is only when argument by counsel for the state is grossly improper and unwarranted upon some point which may have affected defendant's rights that a reversal can be based on improper argument."

See also Fry v. State, 91 Okl.Cr. 326, 218 P.2d 643.

It is finally urged that "the court erred in not properly instructing the jury". And it is correctly said, as stated in Daniel v. State, 67 Okl.Cr. 174, 93 P.2d 47, and other cases, that "In a criminal prosecution, the trial judge has the statutory duty to instruct the jury on the salient features of the law raised by the evidence, without a request from the defendant. 22 Okl.St.Ann. § 856."

It is contended that the court should have given an instruction with reference to possession of recently stolen property. No such instruction was requested, and in fact no exception was interposed to any instruction given.

The defense interposed by the defendant was an alibi. He denied having been in Hulbert the night of the robbery, May 30–31, 1953 and the court therefore gave an instruction to the jury covering such defense. The court also gave an instruction covering circumstantial evidence. Thus the court instructed the jury on the salient features of the law raised by the evidence. The defendant denied having had any of the property shown to have been stolen from the Squyres store of Hulbert in his green Ford automobile, or in his possession, and specifically denied dumping the money and other items along the route where found and where the green Ford car

was shown to have passed. He did, as heretofore stated, admit ownership of the pistol and rope found in his car, and admitted that the cowboy boots and "T" shirt found near some of the stolen items belonged to him, and that he had recently worn them in a rodeo event, but he contended that such items were in his car when the sheriff arrested him and that if the boots and shirt were later found in a field by the roadside someone had "planted" them there. It is our conclusion that the instructions fully covered the issues raised by the evidence. A trial court is not required to instruct on every possible question that might arise. Relf v. State, 44 Okl.Cr. 239, 280 P. 851.

We believe from a study of the evidence and the instructions given the jury by the court, that the defendant received a fair trial and that no substantial error appears.

The judgment appealed from is therefore affirmed.

JONES, P. J., and BRETT, J., concur.