**John Randy FEUERBORN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16797.**

Court of Criminal Appeals of Oklahoma.

Dec. 6, 1972.

Rehearing Denied Jan. 29, 1973.

**524**

Carroll Samara, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Frank Muret, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

John Randy Feuerborn, hereinafter referred to as the defendant, was charged, tried, and convicted in the District Court of Oklahoma County, Oklahoma for the offense of Possession of Hashish (Marijuana); his punishment was fixed at ten (10) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Joe Resneder testified that on November 8, 1970, he was employed by the Bethany Police Department; that at approximately 1:50 a. m. he observed a grey-colored van disregard a stop sign at the intersection of Northwest Sixteenth and Rockwell Streets in Bethany. He immediately turned on his red lights and took pursuit of the vehicle. The van traveled for approximately two blocks, at which time it pulled into a driveway. He got out of the patrol car and went up to the driver's side of the van. He advised the driver that he was under arrest for disregarding a stop sign. The defendant, who had been a passenger in the van, got out of the vehicle and walked around it toward the officer. The defendant was carrying a sack with several brass rods projecting from the top of it. He asked the defendant what was in the sack and the defendant did not reply. The officer reached out his hand and the defendant handed him the sack. He testified that he was concerned about the contents of the sack for his own safety. (Tr. 6) He observed a small plastic bag containing dark brownish matter in the sack. He then smelled the substance and determined it to be hashish. He placed the defendant under arrest for possession of hashish and advised him of his constitutional rights. He next conducted a search of the vehicle and found within it a box containing several homemade pipes, a Watson scale, pipe bowls, and filters. Defend-

ant was taken to the Bethany Police Department and interrogated. When he was asked if the sack contained hashish, he nodded his head in the affirmative; the evidence was subsequently delivered to Captain Sharp.

John McAuliff, a chemist with the Oklahoma State Bureau of Investigation, testified that he received the evidence from Captain Sharp. He examined the contents of the plastic bag microscopically and chemically and testified that in his opinion, it was *"cannabis sativa,* known in this form as hashish."

Major Sharp testified that he was called to the Bethany Police Department in the early morning hours of November 8. He examined the evidence obtained by Officer Resneder, initialed it, tagged it, and the next day transported it to the State Bureau of Investigation. Sharp testified that based upon his 13½ years experience as a police officer, and having attended special schools pertaining to drugs and the equipment used thereon, it was his opinion the paraphernalia found in the box was associated with the use of hashish and marijuana.

For the defense, co-defendant David Wesley McCann testified that he was driving his 1961 Volkswagon bus when he and the defendant were stopped on the morning in question. When the police car pulled them over, he told the defendant to do something with the sack while he talked with the police officers. He testified that the hashish and the paraphernalia were his property, and did not belong to the defendant. He testified that he had previously entered a plea of guilty and had been sentenced. On cross-examination he testified that he and the defendant were "very old friends," and that prior to being arrested he and the defendant had been at Thomas Thornton's house in Midwest City, and that they both had been smoking the hashish. He testified that the defendant knew that the hashish was in the paper sack that he carried from the car.

The sole proposition asserts that the trial court erred "in failing to sustain defendant's motion to suppress and in overruling defendant's objection to the admission into evidence of the purported contraband, all of which was obtained in violation of defendant's constitutional and statutory rights, and the result of an unlawful search and seizure." We are of the opinion that the trial court properly overruled defendant's motion to suppress. The evidence is uncontradicted that the officer observed the vehicle in which the defendant was a passenger disregard a stop sign. The officer immediately turned on his red light and attempted to stop the vehicle. The vehicle continued for approximately two blocks until it stopped in a driveway. The officer immediately approached the driver and informed him that he was under arrest for the traffic violation. The defendant got out of the car and walked around the vehicle toward the officer, carrying a sack with rods protruding from the top of it. The officer testified that because of the darkness, he could not tell whether they were guns or knives, and that he searched the sack to insure his own safety. In the landmark case of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the Supreme Court stated:

"The crux of this case, however, is not the propriety of Officer McFadden's taking steps to investigate petitioner's suspicious behavior, but rather, whether there was justification for McFadden's invasion of Terry's personal security by searching him for weapons in the course of that investigation. We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of

armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives."

"In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations *where they may lack probable cause for an arrest.* When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." (Emphasis Added)

The Court further stated:

"Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; *the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."* (Emphasis Added)

Applying the standards set forth by *Terry, supra,* we are of the opinion that the officer acted as a reasonably prudent man in his belief that his safety was in danger. The judgment and sentence is, accordingly, affirmed.

BLISS, J., specially concurs.

BRETT, J., dissents.

BLISS, Judge (specially concurring):
I concur specially. The defendant, although not the violator of the traffic law but a passenger in the vehicle, alighted therefrom, walked around the car and into the immediate presence of the driver, co-defendant, and the arresting officer, and thereby placed himself within the immediate area justifiably searched by the officer, who acted as a reasonably prudent person would do under like conditions in apprehension of his own safety.

BRETT, Judge (dissenting).
I must respectfully dissent to this decision for the reason the search and seizure in this case, premised upon a traffic violation, does not meet the requirements of the United States Constitution and the Constitution of the State of Oklahoma.