Cecil Wayne JOHNIKEN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–75–635.

Court of Criminal Appeals of Oklahoma.

May 10, 1976.

Michael B. Gassaway, Hamilton & Lambert, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Cecil Wayne Johniken, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRM–75–504, for the offense of Unlawful Possession of Marihuana, in violation of 63 O.S.1971, § 2–402. The jury fixed his punishment at six (6) months' imprisonment, and subsequently upon judgment and sentencing, the defendant's application for suspended sentence was granted and from said judgment and sentence a timely appeal has been perfected to this Court.

The State called as its first witness James Fitzpatrick, an officer with the Oklahoma City Police Department. Officer Fitzpatrick testified that on February 17, 1975, at approximately 11:30 p. m., he observed a vehicle making a left turn against a red stoplight. At this point Officer Fitzpatrick began to pursue the automobile. After following the vehicle for two blocks, which according to the testimony of Officer Fitzpatrick was traveling at a speed in excess of the posted limit, the officer engaged his emergency lights. The emergency lights apparently had no effect

on the operator of the vehicle and at three blocks Officer Fitzpatrick engaged his siren. He continued to pursue the vehicle at an increased speed of 55 miles per hour for eight to nine more blocks until the vehicle finally came to a stop. At this point Officer Fitzpatrick remained in his vehicle long enough to radio for the assistance of a back up unit and then he emerged from his patrol car to confront the defendant, who had in the meantime left his pickup and walked to the front of the officer's car. After momentarily observing the defendant, Officer Fitzpatrick determined that the defendant was under the influence of some intoxicant, and he therefore promptly placed the defendant in his patrol car. Due to the fact that a camper was installed on the back of defendant's pickup, Officer Fitzpatrick could not see if anyone else was in the pickup. However, when he opened the door of defendant's pickup he discovered the presence of two other persons, one of whom was the co-defendant, Mary Jane McClelland. After observing the other occupants Officer Fitzpatrick noticed the presence of several "burnt roaches" laying in the ashtray of the pickup. Officer Fitzpatrick then testified that based on his prior experience the remains in the ashtray appeared to be marihuana. At this time the back up unit which had been previously summoned by Officer Fitzpatrick arrived and the two other occupants of defendant's pickup were removed and placed in the patrol cars. Officer Fitzpatrick then removed the ashtray from the defendant's vehicle and discovered, in addition to the "burnt roaches," a green leafy substance in the back of the ashtray which also appeared to be marihuana. He took the ashtray to his vehicle, called a wrecker and advised the subjects that they were under arrest.

The State produced as its next witness Melvin Hett, a forensic chemist employed by the Oklahoma City Police Department and the Oklahoma State Bureau of Investigation. The witness testified that he ran three separate tests on the contents of the ashtray taken from the defendant's pickup: a microscopic examination; a modified Duquenois Levine test; and, a thin-layer chromatography. On the basis of this analysis he determined that State's Exhibit No. 2 contained marihuana.

█ The defendant, in his first assignment of error, urges that the actions of Officer Fitzpatrick amounted to an illegal search and seizure. In support of this, he has offered several citations, none of which we feel adequately reach the issue herein presented. It is of course obvious that each search and seizure presents a unique set of circumstances which must be examined accordingly. There was, in regard to the alleged illegal search and seizure, a motion to suppress hearing in which evidence, not admitted at trial, was presented. This evidence consisted of testimony by Officer Fitzpatrick which revealed that Officer Fitzpatrick, upon approaching the defendant immediately after the stop clearly detected the aroma of marihuana, emanating from the person of the defendant. This, coupled with the defendant's intoxicated appearance, was a substantial basis for the officer's decision to place the defendant under arrest. What originally began as a legitimate traffic arrest developed into a set of circumstances which would indicate to the prudent officer a necessity for further investigation. At this point we deem it necessary to review these specific facts which, in our opinion, justified the actions of Officer Fitzpatrick in opening the door of the defendant's vehicle: First, the defendant failed to yield to the officer's pursuit after more than a reasonable time had elapsed; second, the defendant appeared to be intoxicated; third, the defendant's person had about it a strong odor of marihuana; fourth, the time was approximately 11:30 p. m.; and fifth, the presence of the camper on the defendant's vehicle obstructed the officer's view into the cab, thus making it impossible for the officer to determine whether or not the defendant was accompanied by other individuals. Under these

circumstances, it would be totally unreasonable, to say the least, to expect an officer to turn his back on a vehicle which may easily harbor persons who could, possibly, come to the aid of the defendant. In *Feurborn v. State*, Okl.Cr., 505 P.2d 523 (1973), this Court cited from the case of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the following relevant parts:

"'. . . We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.

"'In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.' " (Emphasis omitted)

Although the situation contemplated by *Terry* is different from the instant case, the above quotations are clearly analogous. The following testimony was elicited from Officer Fitzpatrick at the hearing on the motion to suppress:

"Q. You went there for the specific purpose of searching to see if there was marihuana, is that right?

"A. My primary purpose at this moment was to see if anyone else was in the vehicle.

"Q. Mr. Johniken was too far away to get any weapons wasn't he? Is that a fair statement?

"A. Out of his vehicle?

"Q. Yes.

"A. He was at the tailgate. If he had one hidden in the bumper, he could get to it.

"Q. Can you tell us why you were concerned about anybody else being in the vehicle?

"A. The entire matter—the way the event occurred.

"Q. You were suspicious there was marihuana in the vehicle?

"A. I was suspicious of that. I also wanted to know if anyone else was in the vehicle because anytime I have a light and siren on for eight blocks and they do not stop, I become suspicious of that vehicle." (Tr. 17)

Also, at a later time in the hearing on the motion to suppress the following testimony was presented:

"Q. Were you concerned they might have weapons?

"A. At first I was concerned with that.

"Q. When you went up to the cab?

"A. Well, when I first returned to the vehicle I went up with a lot of caution, yes, sir." (Tr. 25)

From the foregoing testimony, it is easily discernible that Officer Fitzpatrick displayed a reasonable concern for his own safety. Although an officer, in reality, is very seldom attacked the consequences of such an occurrence are so grave as to warrant measures which are reasonably calculated to prevent or lessen the chances of such a tragedy. In light of the above, we

necessarily conclude that Officer Fitzpatrick, acting under the circumstances of which he was presently apprised, was more than justified for reasons relating to his own safety in opening the door of the defendant's vehicle.

■ Having come to this conclusion, the following passages from *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), become particularly relevant:

> "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. . . .
>
> . . . . . .
>
> ". . . In each case, this initial intrusion is justified by a warrant or by an exception such as 'hot pursuit' or search incident to a lawful arrest, or by an *extraneous valid reason for the officer's presence.* . . ." (Emphasis added)

In the instant case immediately subsequent to the justified initial intrusion of the defendant's automobile, was the observation by Officer Fitzpatrick of the burnt marihuana cigarettes laying in "plain view." The evidence as presented at trial revealed that the marihuana cigarettes were laying in the open ashtray and that Officer Fitzpatrick observed the same in the light of the cab light which came on at the instant Officer Fitzpatrick opened the door of the pickup. Having therefore determined that the initial intrusion of Officer Fitzpatrick into the defendant's vehicle was proper under the circumstances and that the marihuana seized subsequent thereto was in

"plain view," we find the defendant's first assignment of error to be without merit.

■ The defendant urges in his second assignment of error that the following remarks made by the prosecutor in closing argument contained improper and prejudicial statements, thus depriving the defendant of a fair trial:

> "BY MR. LAWRENCE: . . . Now, if you look at all the evidence presented you've got the fact that the Defendant, instead of stopping for a minor traffic violation, fled; that rather than wait in the truck or by his truck for the officer to come up to him he came back to the officer. Why did he stop at that point? Why didn't he keep going? Couldn't he outrun the officer in his pickup truck? Maybe he thought he'd got rid of everything in the truck—
>
> "MR. HESTER: Your Honor, we'll have to object to that.
>
> "(Following proceedings had at the Reporter's bench outside the hearing of the jury.)
>
> "MR. HESTER: Comes now the Defendant and objects to the statement made by counsel and moves for a mistrial and asks that the jury be admonished to disregard the statement.
>
> "MR. LAWRENCE: Your Honor, that's reasonable from all the evidence.
>
> "MR. HESTER: It's invading the providence (sic) of the jury. Now, Your Honor, the burden is not on the Defendant in the first place to show anything, and I think this would be essentially placing the burden on the Defendant after we have no further chance to argue.
>
> "THE COURT: Mr. Hester, I'm going to overrule your motion and let Mr. Lawrence proceed." (Tr. 105–106)

The defendant contends that these statements, properly objected to, were not reasonable inferences from the evidence at trial and were thus prejudicial. This

Court in *Ford v. State*, Okl.Cr., 532 P.2d 89 (1975), stated:

". . . The rule of law is well established that during closing argument the prosecutor has a right to discuss fully, from his standpoint, the inferences and deductions which may be reasonably drawn from the evidence presented at trial. . . ."

Also in *Glover v. State*, Okl.Cr., 531 P.2d 689 (1975), this Court cited from the Syllabus of *Wing v. State*, Okl.Cr., 280 P.2d 740 (1955), which read as follows:

" 'The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the State and the defendant have a right to discuss fully from their standpoint the evidence and inferences and deductions arising from it. It is only when argument by counsel for the State is *grossly improper* and unwarranted upon some point which may have affected defendant's rights that a reversal can be based on improper argument.' " (Emphasis added)

Also, in *Saylor v. State*, Okl.Cr., 503 P.2d 226 (1972), this Court relied on *Montgomery v. State*, Okl.Cr., 447 P.2d 469 (1968), in holding that remarks of the prosecuting attorney must be flagrant and of such a nature as to be prejudicial to the defendant before they will constitute reversible error. We are of the opinion that in the instant case the complained of questions were reasonable inferences to be drawn from the evidence adduced at trial. In accordance with the authorities cited above, we hold this assignment of error to be wholly without merit.

We observe that the record is free of any error which would justify modification or reversal, and the judgment and sentence is, accordingly *AFFIRMED*.

BRETT, P. J., and BLISS, J., concurs.